**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES M. ROBERTS and ANNE ROBERTS,**

                              **Plaintiffs,**

         **v.**                                          **1:13-CV-1169**

**GLOBALFOUNDRIES, U.S., INC. and M+W U.S., INC.,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.    INTRODUCTION**

Plaintiffs James M. Roberts and Anne Roberts bring this action against Defendants

Globalfoundries, U.S., Inc., and M+W U.S., Inc., asserting claims under New York Labor

Law §§ 240(1), 241(6), and 200, as well as for common-law negligence and loss of

consortium.  _See_ Compl., dkt. # 1.  The parties cross-move for summary judgment.  _See_

dkt. # 22 (plaintiffs' motion); dkt. # 24 & 25 (defendants' motion).  The Court has considered

all of the submissions relative to these motions, and reaches its decision without the need

for oral argument.  For the reasons that follow, plaintiffs' motion is denied and defendants'

motion is granted in part and denied in part.

**II.    STANDARD OF REVIEW**

On a motion for summary judgment the Court must construe the properly disputed

facts in the light most favorable to the non-moving party, _see Scott v. Harris_, 127 S. Ct.

1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011). When considering cross-motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir. 2002)(citation omitted). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

## III.    BACKGROUND[1]

During relevant times, Globalfoundries U.S. Inc. ("Globalfoundries") was the owner of a building in Malta, New York upon which construction was taking place for a new semiconductor manufacturing facility. M&W U.S., Inc. ("M&W") was the general contractor of this construction project, and Coghlin Huen, LLC ("Coghlin Huen") was the subcontractor

---

[1]Ordinarily, on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). Where both parties have moved for summary judgment, it may thus be necessary to distinguish their factual assertions accordingly. However, in this case, the facts are, in large part, not in dispute, and therefore the Court has consolidated the parties' factual statements for purposes of this section. Unless indicated otherwise, the facts are taken from the parties' Local Rule 7.1(a)(3) Statements of Material Facts that are admitted by the opposing party, properly supported by the record, or deemed admitted for failing to provide proper factual opposition. *See* Local Rule 7.1(a)(3).

2

in charge of electrical conduit installation.  Plaintiff James M. Roberts ("Roberts") was employed by Coghlin Huen as an electrician.

James Mulligan was Globalfoundries' principal safety engineer.  He  was responsible for health and safety programs including fall protection, health and safety training, and emergency response.   Amanda Gonzalez was Globalfoundries' Construction Environmental, Health and Safely Manager.  She facilitated meetings between the construction team and the operations team and helped them build the relationships necessary to work together.  Globalfoundries' safety plan includes the requirement that all contractors and subcontractors perform in compliance with local, state, and federal regulations.

 Werner Greyling was M+W's project manager for this project.   He was in charge of construction, scheduling, safety, and design.  He was also involved with safety programs and/or safety projects on the job site.  M&W's safety plan also includes a requirement that all subcontractors must perform in compliance with local, state and federal regulations. James Mulligan testified that M&W was responsible for all safety oversight of the project at issue in this matter.

On July 22, 2011, Roberts was assigned by his Coghlin Huen foreman to "pull string" to a junction box previously installed on the third floor of Globalfoundries' FAB 8.1 building. "Pulling string" means to pull conduit through piping to a junction box.  The room where Plaintiff performed this work was the "air chase room" designed for air circulation into an adjacent clean room.  The air chase room has a framework of thirty-six (36) inch wide concrete ledges that rise 39 inches from a sub-floor.  The concrete ledges surround a series

of approximately ten (10) foot by ten (10) foot square recessed areas.[2][3]    Each recessed

area has a sub-floor 39 inches below the top of the concrete ledges that surrounded them.

The entrance/exit to the air chase room is on level with the top of the concrete ledges,

making the top of the framework of concrete ledges, in a sense, the "floor" of the air chase

room.  Because of the series of recessed areas, Roberts described the air chase room as

resembling a honeycomb.

     At the entrance/exit of the air chase room, a vertical steel column sat on one of the

concrete ledges.  The vertical steel column reduced the width of the concrete ledge on

which it sat to approximately 15 inches.   Workers wishing to enter the air chase room and

proceed along the concrete ledge on which the vertical steel column sat were required to

navigate around the vertical steel column.  The same was true when exiting the air chase

room from this concrete ledge.

     On July 22, 2011, Roberts was directed by his Coghlin Huen foreman to proceed

along a horizontal concrete ledge in the air chase room to one of the recessed areas, climb

down a pre-positioned  ladder, and pull string at a pre-existing junction box.[4]  The junction

box was located near the sub-floor of the recessed area.  Roberts had no difficulty: (a)

navigating around the vertical steel column on the horizontal ledge when he entered the air

---

[2]Defendants maintain that the surrounding material consisted of "thirty-six (36) inch wide structural horizontal beams (not concrete ledges) that rose from the floor, which created a series of approximate ten (10) foot wide by ten (10) foot square areas on the floor."  The difference between "structural horizontal beams" and "concrete ledges" is immaterial on the instant motions.

[3]Plaintiffs assert that the recessed areas were 12 feet wide by 21 feet long, but they do not properly deny defendants LR 7.1(a)(3) Statement of Material Facts asserting, *inter alia*, that there was a series of 10' x 10' square recessed areas in the air chase room. *See* dkt. # 29-3, ¶13.  Moreover, the differential between 10' x 10' and 12' x 21' recessed areas is immaterial to the instant motions.

[4]The concrete ledge Roberts was directed to traverse to reach the recessed area where the junction box was located was a concrete ledge with a vertical steel column on it.

chase room; (b) proceeding along the horizontal ledge to the recessed area; (c) climbing down the ladder to the junction box; and (d) pulling string at the junction box as directed. Roberts completed his string pulling duties while standing on the sub-floor.  He then climbed back up the ladder and began navigating along the horizontal ledge toward the entrance/exit of the air chase room.  As he attempted to navigate past the vertical structural steel column, he contends that he bumped his shoulder against the vertical column causing him to lose his balance and fall into the adjacent recessed area.  Roberts Dep., pp. 89-90, Pl. Ex. C.

Defendants dispute whether Plaintiff actually "fell" off the concrete ledge because the Incident Investigation Report and certain medical records indicate that Roberts "jumped" from the ledge.  The Incident Investigation Report, which was not completed by Roberts, indicates: "Description of Incident: Employee walking along raised concrete, brushed against exposed beam which caused him to jump into the air shaft. (3 ft fall)."  Pl. Ex. N. The Incident Investigation Report also indicates: "Object or substance causing injury or illness: James' shoulder hitting diagonal steel, causing him to lose balance into pit. (3' 3")." *Id.*   The ambulance service called to the scene completed a report indicating in relevant part: "History of Present Illness: pt reports that while working he jumped off a 3 foot wall.  pt states he landed on his feet but felt sharp pain across the top of his foot."  Def. Ex. K.   Dr. Kurt Voellmicke, who later treated Roberts, provides office notes from August 12, 2011 indicating in relevant part: "Mr. Roberts reports that he fell at work on July 22nd.  He was wearing work boots, jumped off a high step over some pipes and landed forcefully on cement with the work boot.  Immediate pain, swelling, and was taken by ambulance to the Saratoga Hospital." *Id.*

There is no dispute that after falling or jumping from the concrete ledge, Roberts

5

landed on his feet in a recessed area and sustained a right calcaneus fracture.

The were no safety railings on the concrete ledges in the air chase room.  While Roberts was wearing a safety harness and was provided the use of a ladder on July 22, 2011, the harness had no attachments to connect with anything along the concrete ledge and the ladder was fixed inside the recessed area where he was working.  Consequently, neither was capable of preventing a fall from the  concrete ledge.

M&W's project manager, Werner Greyling, testified that the safety device to be provided to a worker to prevent a fall into a recessed area is a handrail located on the leading edge side of the floor.[5]  Greyling also testified that having workers such as Roberts access work areas by traversing a concrete ledge was unsafe because there were no safety railings and it was narrowed by the vertical structural beam, which is considered an obstruction.  However, Greyling further attested that the concrete ledge was not an authorized, approved, or known pathway, and that there that there were other routes to access the work area so Robert should not have used the concrete ledge.  Nevertheless, James Mulligan from Globalfoundries testified that the concrete ledges with the structural beams surrounding the openings in the air chase room were the walking surface for workers to access their work areas in the air chase room.

## IV.    DISCUSSION

### a.  Labor Law § 240(1) Claim

The parties cross-move for summary judgment on plaintiffs' New York Labor Law § 240(1) ("Labor Law § 240(1)") claim.  For the reasons that follow, both motions are denied.

---

[5]Defendants dispute whether Greyling was referring to the concrete ledge as "a floor."

### 1.  Labor Law § 240(1)

Labor Law § 240(1) provides in pertinent part:

> 1. All contractors and owners and their agents . . . . who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor L.  240(1).

"[S]ection 240(1) 'is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed.'" *Carpio v. Tishman Const. Corp. of New York,* 240 A.D.2d 234, 658 N.Y.S.2d 919, 921 (1st Dep't 1997)(quoting *Quigley v. Thatcher,* 100 N.E. 596, 506 (N.Y. 1912)).  As is evident, this statute protects workers against certain elevation-related hazards.  *Coleman v. Crumb Rubber Mfr's*, 92 A.D.3d 1128, 1129 (3d Dep't 2010).  "The statute 'requires owners and contractors to provide proper protection to those working on a construction site,' and 'imposes absolute liability where the failure to provide such protection is a proximate cause of a worker's injury.'" *Lawler v. Globalfoundries U.S., Inc.*, 2014 WL 4900480, at *4 (N.D.N.Y., Sept. 30, 2014)(quoting *Fabrizi v. 1095 Ave. of Americas, L.L.C.*, 8 N.E.3d 791, 794 (N.Y. 2014)).  However, "[t]he extraordinary protections of Labor Law § 240(1) extend only to a narrow class of special hazards, and do 'not encompass any and all perils that may be connected in some tangential way with the effects of gravity.'" *Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 915-916 (N.Y. 1999)(quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 (N.Y. 1993) (emphasis omitted)).

7

### 2. Elements of a § 240(1) Claim

"[T]o prevail on a § 240(1) claim, a plaintiff must show that (1) the statute was violated and (2) the violation was the proximate cause of his injury. Once those elements are established, contributory negligence of the plaintiff cannot be raised as a defense." *Lawler*, 2014 WL 4900480, at *4 (citing *Blake v. Neighborhood Hous. Servs. of New York City*, 1 N.Y.3d 280, 771 N.Y.S.2d 484, 803 N.E.2d 757, 761 (N.Y. 2003)); *see also Cahill v. Triborough Bridge & Tunnel Auth.*, 4 N.Y.3d 35, 39, 823 N.E.2d 439 (N.Y. 2004)("[T]his section creates a liability that is strict, or absolute, in two senses: the duty it imposes is nondelegable, and thus contractors and owners are liable under the statute whether or not they supervise or control the work; and where an accident is caused by a violation of the statute, the plaintiff's own negligence does not furnish a defense. It is still necessary, however, for the plaintiff to show that the statute was violated and that the violation proximately caused his injury."). Where the evidence establishes that a safety device was provided but "the plaintiff's own negligence was the sole proximate cause of the injuries, the defendant may not be held liable for those injuries." *Daley v. 250 Park Ave., LLC*, 126 A.D.3d 747, 749 (2d Dep't 2015)(citing cases). However, "'[t]he sole proximate cause defense does not apply where a plaintiff was not provided with an adequate safety device as required by the Labor Law.'" *Lawler*, 2014 WL 4900480, at *8 (quoting *LaDeRose v. Bloomingdale's Inc.*, 120 A.D.3d 41, 986 N.Y.S.2d 127, 130 (1st Dep't 2014) (alterations omitted) ).

As Judge Kahn explained in *Lawler*,

"Whether a plaintiff is entitled to recovery under Labor Law § 240(1) requires a determination of whether the injury sustained is the type of elevation-related hazard

8

to which the statute applies." *Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.,* 18 N.Y.3d 1, 935 N.Y.S.2d 551, 959 N.E.2d 488, 491 (N.Y. 2011).  This inquiry centers on "whether the injured worker's task creates an elevation-related risk of the kind that the safety devices listed in section 240(1) protect against." *Salazar v. Novalex Contracting Corp.,* 18 N.Y.3d 134, 936 N.Y.S.2d 624, 960 N.E.2d 393, 395 (N.Y. 2011) (internal quotation marks omitted).  "The kind of accident triggering section 240(1) coverage is one that will sustain the allegation that an adequate scaffold, hoist, stay, ladder or other protective device would have shielded the injured worker from harm directly flowing from the application of the force of gravity to an object or person." *Id.* at 396; *see also Wilinski,* 935 N.Y.S.2d 551, 959 N.E.2d at 492 ("[A] defendant's failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability.").

2014 WL 4900480, at *5; *see also Coleman*, 92 A.D.3d at 1129 ("Liability under the statute exists when a worker's 'task creates an elevation-related risk of the kind that the safety devices listed in section 240(1) protect against.'")(quoting *Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 (N.Y. 2007)).

### 3.  Owner or Contractor

Ultimate responsibility for an injury occasioned by a violation of Section 240(1) lies with the owner of the real property and contractor, and liability cannot be avoided by delegating the duty to another.  *Haimes v. New York Telephone Company*, 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601 (N.Y. 1978).   There is no dispute that Globalfoundries is the owner of the property where construction was taking place, and that M&W was the general contractor on this construction project.  As such, ultimate responsibility for an injury occasioned by a violation of Section 240(1) lies with Globalfoundries and M&W.

### 4.  Covered Activity

Robert's work-related task was pulling wire through a conduit at a junction box located on the sub-floor of a recessed area in the air chase room.  This activity constitutes the "altering" of a building or structure within the meaning of Labor Law § 240(1). *McCrary v.*

9

*Cedar Manor Realty, LLC*,  46 Misc.3d 1213(A), 9 N.Y.S.3d 594 (Table), 2015 WL 361257, at *9, 2015 N.Y. Slip Op. 50054(U) (N.Y. Sup. 2015)(plaintiff was engaged in the activity of pulling wires through a conduit in the ceiling as part of the installation of a new nurse call system was altering building)(citing *Weininger v. Hagedorn & Co.*, 91 N.Y.2d 958, 959–960 (N.Y. 1998)(The activity of "running computer and telephone cable through the ceiling from an existing computer room in [defendant's] office to newly leased space that would be used as a telecommunications center," which "involved standing on a ladder to access a series of holes punched in the ceiling and pulling the wiring through canals' that had been made in chicken wire in the ceiling" constituted "altering" of a building or structure within the meaning of Labor Law § 240(1))).

### 5.  Elevation Related Risk

While Roberts' pulling of wire through a conduit at the junction box did not occur at an elevation such as to implicate Labor Law § 240 (1), s*ee Leshaj v Long Lake Assoc*., 24 AD3d 928, 929 (3rd Dep't 2005)("a work site is elevated within the meaning of the statute where the required work itself must be performed at an elevation . . . such that one of the devices enumerated in the statute will safely allow the worker to perform the task" )(internal quotation marks and citations omitted); *see also Coleman*, 92 A.D.3d at 1129 ("The existence of a lower level below the floor where plaintiff was working, without more, did not create an elevation-related risk . . . .), given the broad interpretation of the statute the Court declines to take a myopic view of the circumstance of Roberts' task.  Roberts' work assignment was to pull wire at a junction box in a recessed area, and he was directed to reach that area by navigating along a concrete ledge.  James Mulligan attested that the

walking surfaces for workers to access their work areas in the air chase room were the concrete ledges.  The concrete ledges were elevated 39 inches above the recessed areas that the ledges surrounded. It was the navigation along the concrete that created an elevation-related risk of the kind that a safety device (such as a railing) might have protected against.  Therefore, the Court finds that the situation is covered by § 240(1). Because there was no railing preventing a fall from the concrete ledge, § 240(1) is violated.

### 6.  Contributory Negligence

As indicated above, once a plaintiff establishes that the § 240(1) has been violated, contributory negligence cannot be raised as a defense unless the evidence establishes that, despite being provided with an adequate safety device, the plaintiff's own negligence was the sole proximate cause of the injury.  Here, the undisputed facts indicate that Roberts was not provided an adequate safety device to prevent falls from the concrete ledge.  Thus, contributory negligence cannot be raised.

### 7.  Statutory Violation as Proximate Cause of Roberts' Injury

The issue then becomes whether the statutory violation proximately caused Roberts' injury.  Plaintiffs contend that when Roberts was attempting to navigate around the vertical steal beam that rose from the concrete ledge, his shoulder came in contact with the vertical beam causing him to lose his balance and fall into the adjacent recessed area.  However, defendants point out that Roberts told co-workers and medical personnel that he "jumped" into the recessed area.  These statements appear to have been made in the context of Roberts' statements indicating that as he started to fall, he made the conscious decision to lead with his feet - that is, "jump" - to avoid more serious injury.  But the Court's function on

11

summary judgment is not to determine what a person meant by a term, but only whether

there exists a genuine question of material fact.   Viewing the facts in the light most

favorable to defendants, as the Court must on plaintiffs' motion for summary judgment, it is

possible for a jury to conclude that Roberts' injury was caused by his conscious decision to

jump into the recessed area.  Accepting these facts for purposes of this motion, it is

possible for a reasonable fact finder to conclude that Roberts' decision to jump into the

recessed area was the proximate cause of his injury, and that a safety railing on the

concrete ledge - if one had been provided - would not have stopped him from doing so.

Thus, it is possible for a jury to conclude that the violation of § 240(1) (*i.e.* the absence of a

safety device) was not a proximate cause of Roberts' injury.  Accordingly, both parties'

motions for summary judgment on the Labor Law § 240(1) claim are denied.

### b.  Labor Law § 241(6)

The parties also cross-move for summary judgment on plaintiffs' New York Labor

Law § 241 (6) ("Labor Law § 241(6)") claim.  For the reasons that follow, both motions are

denied.

### 1.  Labor Law § 241(6)

Labor Law § 241(6) provides:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

N.Y. Labor L. § 241(6).

12

The statute "requires owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor." *St. Louis v. Town of N. Elba,* 16 N.Y.3d 411, 923 N.Y.S.2d 391, 947 N.E.2d 1169, 1170 (N.Y. 2011). "Because the statutory duty imposed is nondelegable, a plaintiff need not show that the defendants exercised supervision or control over the work site in order to establish liability." *Lawler*, 2014 WL 4900480, at *9 (citing *St. Louis v. Town of N. Elba,* 947 N.E.2d at 1170). "However, 'comparative negligence remains a cognizable affirmative defense to a section 241(6) cause of action.'" *Id.* (*quoting St. Louis v. Town of N. Elba,* 947 N.E.2d at 1170).

### 2.  Elements of a § 241(6) Claim

In order to be entitled to summary judgment on the issue of liability under Labor Law § 241(6), plaintiffs must show that Roberts was engaged in a covered activity when he was injured; that there were violations of New York's Industrial Code; and that such violations were a proximate cause of his injury.

### 3.  Covered Activity

For reasons discussed above, there is no question that Roberts was employed on a construction site and was performing construction work at the time of the accident.  Thus, Roberts was engaged in a covered activity when he was injured.

### 4.  Violation of New York's Industrial Code

Turning to the question of whether there were violations of New York's Industrial Code ("IC"),  Plaintiffs allege violations of IC §§ 23-1.7(b)(1), 23-1.7(e), 23-1.15 and 23-1.22(b)(2).  The interpretation of an IC regulation and the determination as to whether a

particular condition is within the scope of the regulation both present questions of law for the court. *Wojcik v. 42nd Street Development Project,* 386 F. Supp.2d 442, 454-55 (S.D.N.Y. 2005)(citations omitted).

### A.  IC § 23-1.7 (b)(1)

IC § 23-1.7 (b)(1)(i) requires that "[e]very hazardous opening into which a person may step or fall" to be covered or protected by a safety railing. 12 N.Y.C.R.R. § 23-1.7(b)(1)(i).  Defendants argue that this provision does not apply because Roberts did not fall into a "hazardous opening," but rather fell (or jumped) off a horizontal beam to the sub-floor below.  However, the facts indicate that in the honeycombed-shaped air chase room, there was a grid of horizontal ledges running along the perimeters of a series of 10' x 10' recessed areas.  Unlike the expanse at the edge of a roof which does not constitute a defined area, the concrete horizontal ledges encased the series of 10' x 10' recessed areas. These recessed areas constituted "openings" to the sub-floor 3.2' below.  "Case law has established that an opening must be of  significant depth and size to fall within the regulation's protection.  No specific minimum size has been established, but . . .  many cases applying this provision reference a hole large enough for a person to fall through to a lower area." *Coleman*, 92 A.D.3d at 1130 (interior quotations marks and citations omitted). The depth of the opening must be enough to jeopardize the safety of a worker who might fall into it, thereby requiring safety devices.  The 10' x 10' recessed areas with their 3.2' deep sub-floorings meet these criterion.[6]  Accordingly, the Court finds that Section 23-1.7 (b)(1)(i) applies, requiring railings on the edges of the concrete horizontal ledges that

---

[6]This is true even if the recessed areas were 12 feet wide by 21 feet long, as plaintiffs assert.

workers used to move about the air chase room.

### B.  IC § 23-1.7(e)

IC § 23-1.7(e), which addresses "[t]ripping and other hazards," provides in pertinent part that "[a]ll passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping." 12 N.Y.C.R.R. § 23-1.7(e)(1).  Because Roberts is not alleged to have tripped while navigating the concrete horizontal ledge, Section 23-1.7(e) does not apply.

### B.  IC § 23-1.15

IC § 23-1.15 addresses the dimensions of safety railings required by the Industrial Code.  *See* 12 N.Y.C.R.R. § 23-1.15.  This section does define when safety railings are required, so it does not add any obligation not already addressed by another provision of the Industrial Code.  Accordingly, it does not provide a separate predicate for a violation of Labor Law § 241(6).

### C.  IC § 23-1.22(b)(2)

IC § 23-1.22(b)(2) provides in pertinent part that "[r]unways and ramps constructed for the use of persons only shall be at least 18 inches in width . . . ." 12 N.Y.C.R.R. § 23-1.22(b)(2).  While the width of the horizontal cement ledge Roberts traversed was narrowed to 15 inches at the point the vertical steel beam connected to it,  Plaintiffs have not properly denied defendants' contention that there were no ramps in the air chase room. *See* Pl. Resp. to Def. Stat. Mat. Facts, dkt. # 29-31, ¶ 15.  To the extent plaintiffs' contention is that the horizontal cement ledge is a "runway" under IC § 23-1.22(b)(2), the argument is without merit.   The Industrial Code des not specifically define a runway, *see* 12

N.Y.C.R.R. § 23-1.22; § 23-1.4 (definitions), but it is clear that IC § 23-1.22, entitled "Structural runways, ramps and platforms," pertains to temporary structures erected for the purpose of a construction project.  Indeed, IC § 23-1.22(b)(2) applies to "[r]unways . . . *constructed for the use of* persons" (emphasis added), but it is  undisputed that the horizontal concrete ledge Roberts was traversing was a permanent part of the building's air chase room structure.  It was not "constructed for the use of persons."  Further, cases addressing other provisions of IC § 23-1.22(b) have addressed the temporary nature of the structures involved.  *See e.g. Huether v. New York Times Bldg., LLC*, 24 Misc.3d 634, 877 N.Y.S.2d 644, 652 (N.Y. Sup., 2009) ("[A]lthough the Industrial Code does not define the terms 'runway' or 'ramp,' given the fact that [§ 23-1.22(b)(4)] contemplates their use by wheelbarrows, hand carts and hand trucks, it is clear that such runways and ramps are used for the type of loading and unloading operations" involved in that case); *see also Dietz v. Compass Prop. Mgt. Corp.,* 49 A.D.3d 1152, 855 N.Y.S.2d 770 (4th Dep't 2008)(applying IC § 23-1.22 (b)(3) where a plank was put in place in order to load/unload a truck using a wheelbarrow).  The Court finds that IC § 23–1.22(b)(3) is inapplicable in this case.

### 5.  IC Violation as Proximate Cause of Roberts' Injury

The Court turns to whether the violation of IC § 23-1.7(b)(1) - the failure to provide safety railings - was a proximate cause of Roberts' injury.  As indicated above, because there is some evidence that Roberts jumped into the recessed area, it remains a question of fact whether the lack of railings was a proximate cause of his injury.   Further, even if it is concluded that Roberts bumped his shoulder on the vertical beam causing him to fall into the recessed area, a question of remains as whether his own negligence was a proximate

16

cause of his injury. *See Rizzuto v. L.A. Wenger Contracting Co., Inc.,* 91 N.Y.2d 343, 670

N.Y.S.2d 816, 693 N.E.2d 1068, 1071 (N.Y.1998)("[O]nce it has been alleged that a

concrete specification of the Code has been violated, it is for the jury to determine whether

the negligence of some party to, or participant in, the construction project caused plaintiff's

injury."); *Wojcik,* 386 F. Supp.2d at 453 n. 12 ( ("[A] violation of § 241(6), unlike a violation of

§ 240(1), is only some evidence of negligence on the part of the owner or contractor.");

*Shannon v. Lake Grove Ctrs., Inc.,* 118 F. Supp.2d 343, 349 (E.D.N.Y. 2000) ("[V]iolation of

a rule or regulation promulgated pursuant to Section 241(6) does not impose absolute

liability without regard to fault or negligence, but is merely some evidence of negligence.").

Accordingly, the parties' motions for summary judgment related to the Labor Law § 241(6)

claim is denied.

### c.  Labor Law  § 200 Claim

Next, defendants move for summary judgment dismissing plaintiffs' New York Labor

Law § 200 ("Labor Law § 200") claim.  For the reasons that follow, the motion in this regard

is granted.

#### 1.  Labor Law § 200

Labor Law § 200 provides in pertinent part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

N.Y. Labor L. § 200(1).

This "is a codification of the common-law duty imposed upon an owner or general

17

contractor to maintain a safe construction site." *Lawler*, 2014 WL 4900480, at *10 (citation omitted). "Cases involving Labor Law § 200 fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises or conditions at a work site, and those involving the manner in which the work is performed." *Ortega v. Puccia*, 57 AD3d 54, 61 (2nd Dep't 2008). "These two categories should be viewed in the disjunctive" *Id.*

### 2. Dangerous Condition

Plaintiffs seemingly assert claims under both theories, *see generally* Compl., but fail to respond to that aspect of defendants' motion contending that no cognizable claim exists under the first theory because plaintiffs fail to point to an inherently dangerous condition causing Roberts' injury. *See* Def. Mem. L. in Support S.J., pp. 29-30; Plt. Mem. L. in Opp. S.J., pp. 20-23 (arguing only that defendants "had the authority to control *the activity that resulted in plaintiff's injury*.")(emphasis added). The Court agrees with defendants that where an alleged hazardous condition is not inherently dangerous, summary judgment under Labor Law § 200 is appropriate. *See*, *e.g*., *Palacios*, 110 A.D.3d at 699-700 (finding that condition that caused Plaintiff's accident was not inherently dangerous); *Rolewicz v. State of New York*, 73 A.D.3d 1269, 1270 (3d Dep't 2010) (dismissing Section 200 claim, finding that energized cables were not inherently dangerous, they only became exposed through plaintiff's actions); *Dinallo v. DAL Elec*., 43 A.D.3d 981, 982 (2d Dep't 2007) (jack assembly plaintiff tripped over was not an inherently dangerous condition). Plaintiff admitted there was nothing inherently hazardous about the concrete ledge, the vertical column, or his work area. *See* Pl. Res. to Def. Stat. Mat. Facts, ¶ 16.

Further, plaintiffs' failure to respond to this aspect of defendants' motion constitutes consent to granting it. *See Lopez v. Ricky D. Mathely & Bourdeau Bros.,* 8:12-CV-1338 (GTS/RFT), 2015 U.S. Dist. LEXIS 39831, at *12-14 (N.D.N.Y. Mar. 30, 2015)('[W]here a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law . . . , the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3). Stated another way . . . in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a 'modest' burden."); *see also Beers v, GMC,* 97-cv-0482, 1999 U.S. Dist LEXIS 12285, at *27-31 (N.D.N.Y. Mar. 17, 1999) (deeming plaintiff's failure to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment on those claims). Thus, defendants' motion for summary judgment to dismiss the Labor Law § 200 on the theory that a dangerous condition existed is granted.

### 3.  Manner that the Work is Performed

When the manner that the work is performed is at issue, "no liability will attach to the owner [or general contractor] solely because [they] may have had notice of the allegedly unsafe manner in which work was performed." *Dennis v. City of New York,* 304 A.D.2d 611, 612 (2nd Dep't 2003); *see Comes v. New York State Elec. & Gas Corp.*, 82 N.Y.2d 876, 877 (N.Y. 1993). "Rather, when a claim arises out of alleged . . . dangers in the methods . . . of the work, recovery against the owner or general contractor cannot be had under Labor Law § 200 unless it is shown that the party to be charged had the authority to supervise or control the performance of the work." *Hunt v. Laub Family Properties, LLC*, 46 Misc. 3d

1220(A), 2015 WL 734878, at *6 , 2015 N.Y. Slip Op. 50129(U) (N.Y. Sup. Ct. 2015)(citations omitted).   That is, to be held liable, the owner or general contractor must have had "the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Lawler*, 2014 WL 4900480, at *10 (internal quotation marks and citation omitted).

> Plaintiffs argue:
>
> Globalfoundries and M+W had the authority to control the activity that resulted in plaintiff's injury.  Both defendants retained the control to perform weekly walk-in inspections throughout the job site including the air chase room, had daily meetings with the subcontractors, they had the authority to stop any unsafe work, and they had control over safety practices and procedures in the job site. However, no safety device was provided to Roberts to perform the job assigned on July 22, 2011.

Pl. Mem. L. Opp. S.J., pp 21-22.

However, as Judge Kahn pointed out in *Lawler*, "'[g]eneral supervisory authority at a work site for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability ... under Labor Law § 200.'" *Lawler*, 2014 WL 4900480, at *10 (quoting *Perri v. Gilbert,* 14 A.D.3d 681, 790 N.Y.S.2d 25, 29 (App. Div. 2005)).  "Additionally, 'a general duty to ensure compliance with safety regulations or the authority to stop work for safety reasons is insufficient to raise a triable issue of fact' on such a claim." *Id.* (quoting *McCormick v. 257 W. Genesee, LLC,* 78 A.D.3d 1581, 913 N.Y.S.2d 435, 437 (App. Div. 2010); and citing *Perri v. Gilbert Johnson Enters., Ltd.,* 14 A.D.3d 681, 790 N.Y.S.2d 25, 29 (App. Div. 2005) ("[T]he authority to review safety at the site is insufficient if there is no evidence that the defendant actually controlled the manner in which the work was performed."); *Shelley v. Flow,* 283 A.D.2d 958, 724 N.Y.S.2d 244, 245 (App. Div. 2001) ("The contractual duty to oversee the performance of work, inspect the

work site and ensure compliance with safety regulations does not constitute supervision and control over the subcontractor's methods of work.")); *see In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 428 (S.D.N.Y. 2014)("But a duty arises not only when a defendant had the authority to actively control a plaintiff's work on a daily basis but, rather, when a defendant had the authority to correct or prevent [the] unsafe condition giving rise to a plaintiff's injuries. ")(internal quotation marks and citations omitted).

Here, in contrast to the situation in *Lawler*,[7] plaintiffs admit that Roberts received all orders from Coghlin Huen, and that only Coghlin Huen employees were present in his work area. *See* Pl. Res. to Def. Stat. Mat. Facts, ¶¶ 8-9, 21.  Based on plaintiffs' failure to properly deny other statements in their response to defendants statement of material facts, there is also no dispute that Coghlin Huen provided all equipment for Plaintiff's work; that neither defendant ever gave Roberts directions; and that Coghlin Huen directed, supervised and controlled Roberts' work. *Id.* ¶¶ 8-10.  Based on these undisputed facts, Plaintiffs' claim under Labor Law § 200 fails as a matter of law.  Accordingly, defendants' motion dismissing the Labor Law § 200 claim is granted.

### d.  Common-Law Negligence Claim

Defendants also move to dismiss plaintiffs' common-law negligence claim.

Common-law negligence claims are analyzed under the same standards as Labor Law §

---

[7]In *Lawler*, Judge Kahn found that Globalfoundries and M+W (the defendants in that action also) "did more than merely maintain general supervisory and stopping authority over the project. Rather, they dictated the safety procedures used by [the plaintiff and his co-worker] on the day of the accident.  Furthermore, M+W was responsible for providing safety equipment to [the plaintiff's employer's] employees.  Defendants exercised actual control over the manner in which [the plaintiff and his co-worker] were working, and therefore were in a position to correct the job site danger at issue." 2014 WL 4900480, at *11.  Thus, Judge Kahn held that "[b]ecause there is no genuine dispute as to the material fact that Defendants actually controlled the safety procedures used, Plaintiffs are entitled to summary judgment on the issue of liability on the § 200 claim." *Id.*

200 claims, requiring the owner or contractor to have some control over a work situation

before either can be held liable for negligence.  *See  Ortega*, 57 A.D.3d at 63, 866 N.Y.S.2d

at 331 ("The Supreme Court properly granted that branch of the defendants' motion which

was for summary judgment dismissing the plaintiff's claim based on common-law

negligence, for the same reasons that it appropriately granted that branch of the

defendants' motion which was for summary judgment dismissing the claim under Labor Law

§ 200") (citing, *inter alia, Lombardi v. Stout*, 80 N.Y.2d 290, 295 (N.Y. 1992));  *Wojcik*, 386

F. Supp. 2d at 456 ("Labor Law § 200 requires plaintiff to prove that defendant 'exercised

some supervisory control over the operation.' This rule is consistent with the common law

principle that 'an owner or general contractor could not be held responsible for the negligent

acts of others over whom he had no direction or control.'" (quoting from *Ross v.

Curtis–Palmer Hydro–Electric Company et al.*, 81 N.Y.2d 494, 505 (N.Y. 1993) and *Allen v.

Cloutier Const. Corp.*, 44 N.Y.2d 290, 299 (N.Y. 1978)).  Thus, for the reasons discussed

above with regard to the Labor Law § 200 claim, defendants' motion is granted dismissing

the common-law negligence claim.

## IV.    CONCLUSION

For the reasons discussed above, plaintiffs' motion for partial summary judgment

[dkt. # 22] is **DENIED.**

Defendants' motion for summary judgment [dkt. # 24] is **GRANTED in part and

DENIED in part**.  In this regard, plaintiffs' claims under N.Y. Labor Law § 200 and alleging

common-law negligence are **DISMISSED**.  The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated:September 14, 2015

Thomas J. McAvoy
Senior, U.S. District Judge